UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------
SAMSUN LOGIX CORPORATION,

                     Plaintiff,

        - against -

TONGLI SHIPPING CO., LTD.

                     Defendant.
----------------------------------------------------------------X

08 CV 4111

08 Civ.     (   )


**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR AN ORDER OF
MARITIME ATTACHMENT AND GARNISHMENT
PURSUANT TO RULE B(1) OF THE SUPPLEMENTAL
RULES FOR CERTAIN ADMIRALTY AND MARITIME
<u>CLAIMS OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>**



NOURSE & BOWLES, LLP
Attorneys for Plaintiff
SAMSUN LOGIX CORPORATION
One Exchange Plaza
At 55 Broadway
New York, NY 10006-3030
(212) 952-6200

NOURSE & BOWLES, LLP
Attorneys for Plaintiff
SAMSUN LOGIX CORPORATION
One Exchange Plaza
At 55 Broadway
New York, NY 10006-3030
(212) 952-6200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
SAMSUN LOGIX CORPORATION,          :
                                    :
                Plaintiff,          :
                                    :
        - against -                 :   08 Civ.      (   )
                                    :
TONGLI SHIPPING CO., LTD.,          :
                                    :
                Defendant.          :
                                    :
------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR AN ORDER OF
MARITIME ATTACHMENT AND GARNISHMENT
PURSUANT TO RULE B(1) OF THE SUPPLEMENTAL
RULES FOR CERTAIN ADMIRALTY AND MARITIME
CLAIMS OF THE FEDERAL RULES OF CIVIL PROCEDURE**

**PRELIMINARY STATEMENT**

Plaintiff, Samsun Logix Corporation ("Plaintiff") respectfully submits

this Memorandum of Law in support of its application for an order directing

the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure in connection with Plaintiff's admiralty and maritime claims in the amount of $3,031,504.44 resulting from breach of a charter party.

## STATEMENT OF FACTS

On or about July 31, 2007 a charter party contract for the vessel M/V J SAFE was entered into between, Defendant, as owner, and Plaintiff, as charterer, for a maximum period of 7 months (the "Charter"). The charter provides for arbitration of disputes in London.

The Charter provided, among other things, that the vessel was to load cargo at a wide range of ports including Kakinada, India for carriage to a similarly wide range of discharge ports including West Africa. Plaintiff subchartered the vessel to Allied Maritime Inc. (the "Subcharter") for the first trip which would be performed under the Charter. The Subcharter provided for a similar range of load ports and discharge ports as did the Charter. When Allied instructed Plaintiff, and in turn Plaintiff instructed Defendant and the vessel, to load cargo under the Charter at Kakinada, Defendant refused to do

2

so and instead withdrew the vessel from Plaintiff's service and unilaterally terminated the Charter.

Plaintiff thereby lost the opportunity to employ the vessel for the course of the seven month Charter and to gain profit during the course of that employment. Plaintiff estimates that it lost profit during that seven months in the amount of $1,321,914.01.

When Defendant withdrew the vessel from Plaintiff's service, Plaintiff was unable to provide the vessel to Allied under the Subcharter. On those facts, Allied has demanded arbitration in London, brought suit against Plaintiff in this Court in a suit *sub nom* Allied Maritime Inc. v. Samsun Logix Corporation 08 Civ. 3656 (TPG) for which it has demanded damages in the amount of $880,182.43. Allied has in that suit in this Court obtained an attachment of Plaintiff's funds in the amount of $880,182.43 as full security of its claim against Plaintiff.

By its actions, Defendant has breached its contract of Charter with Plaintiff and currently owes to Plaintiff the principal amount of $1,321,914.01. In addition thereto, Defendant owes to Plaintiff reimbursement of the $880,182.43 of Plaintiff's funds which have been

3

attached in this Court by Allied or any lesser sum which is ultimately awarded or adjudged in favor of Allied against Plaintiff.

Legal costs are recoverable in London and it is estimated that such costs, which include arbitrators' fees, will amount to $400,000.00 at today's exchange rate. In addition, interest is recoverable which is estimated to be $429,408.72, based on a rate of interest of 6.5% for 3 years on the principal amount due under the charter, all for a total claim by Plaintiff against Defendant of $3,031,504.44. Plaintiff seeks a maritime attachment and garnishment in this Court in the amount of $3,031,504.44 to provide security for its claims in the London arbitration.

## ARGUMENT

### AN ORDER AUTHORIZING THE ISSUANCE OF PROCESS OF MARITIME ATTACHMENT SHOULD BE GRANTED PURSUANT TO SUPPLEMENTAL RULE B(1) TO ALLOW ATTACHMENT OF DEFENDANT'S ASSETS IN THE HANDS OF NON-PARTIES TO THIS ACTION

Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rule B(1)"), specifically permits prejudgment attachment in admiralty or maritime cases whenever the defendant cannot be "found" with the district:

> With respect to any admiralty or maritime claim <u>in personam</u> a verified complaint may contain a prayer for process to attach the defendant's good and

4

> chattels, or credits and effects in the hands of garnishees to be named in the process to the amount sued for, if the defendant shall not be found within the district. Such a complaint shall be accompanied by an affidavit signed by the plaintiff or the plaintiff's attorney that, to the affiant's knowledge, or to the best of the affiant's information and belief, the defendant cannot be found within the district. The verified complaint and affidavit shall be reviewed by the court and, if the conditions set forth in this rule appear to exist, an order so stating and authorizing process of attachment and garnishment shall issue.

Plaintiff's claim arises under a charter party which is maritime contract and therefore is a claim within the admiralty jurisdiction of this Court. G. Gilmore & C. Black, The Law of Admiralty 22, n. 65 (2d ed. 1975); 1 Benedict On Admiralty § 184 at 12-11 (7th rev. ed. 2002). Vietrix S.S. Co., S.A. v. Salen Dry Cargo A.B., 825 F.2d 709, 713 (2d Cir. 1987); CTI-Container Leasing Corp. v. Oceanic Corp., 682 F.2d 377, 380, n.4 (2d Cir. 1982). Because Plaintiff possesses a maritime claim, it may secure a maritime attachment pursuant to Supplemental Rule B(1) against all assets and property (up to the amount of the claim) belonging to Defendant which may be situated within the district "if the defendant[s] shall not be found within the district." Supplemental Rule B(1).

Application for a maritime attachment is <u>ex parte</u> and no advance notice is required.

As stated in the 1966 Advisory Committee Notes to Supplemental Rule B, no notice was provided for because "[n]one is required by the principles of due process, since it is assumed that the garnishee or custodian of the property attached will either notify the defendant or be deprived of the right to plead the judgment as a defense in an action against him by the defendant." In their comments on the 1985 Amendment, the Committee noted that Supplemental Rule B was amended to provide for judicial scrutiny before the issuance of the attachment "to eliminate doubts as to whether the Rule is consistent with the principles of procedural due process enunciated by the Supreme Court…" Further:

> The rule envisions that the order will issue when the plaintiff makes a prima facie showing that he has a maritime claim against the defendant in the amount sued for and the defendant is not present in the district. A simple order with conclusory findings is contemplated.

<u>Id.</u>

Service of a writ of maritime attachment is not the same as an actual attachment. If there is no property in the garnishee's hands, there is no attachment, and therefore no requirement for notice under Local Rule B.2. If

6

Rule B.1[1] was interpreted to require notice before any property was actually seized, that would enable a defendant to divert its funds and thus defeat the very purpose of maritime security in a case against a foreign or transient defendant. Therefore, Plaintiff may proceed *ex parte* and provide notice promptly <u>after</u> a successful attachment.

For purposes of Supplemental Rule B(1), the term "found within the district" presents a two-pronged inquiry. If the defendant cannot be found within the district for jurisdictional purposes and for service of process, an attachment is permissible. See <u>Seawind Compania, S.A. v. Crescent Line, Inc.</u>, 320 F.2d 580, 582 (2d Cir. 1963); see also 29 <u>Moore's Federal Practice</u> § 705.02[2][b] (Matthew Bender 3d ed.). As explained in the accompanying Affidavit of John P. Vayda, Defendant cannot be found within this District Court under this analysis. Accordingly, the issuance of an order of maritime attachment is proper.

Rule B attachment is also proper in aid of foreign litigation or arbitration. <u>Polar Shipping Ltd. v. Oriental Shipping Corp.</u>, 680 F.2d. 627, 632 (9th Cir. 1982); <u>Staronset Shipping Ltd. v. North Star Navigation Inc.</u>,

---

[1] Local Admiralty Rule B.1 "Affidavit That Defendant Is Not Found Within the District," states:
  The affidavit required by Supplemental Rule B(1) to accompany
  the complaint and the affidavit required by Supplemental Rule
  B(2)(c), shall list the efforts made by and on behalf of the plaintiff
  to find and serve the defendant within the district.

659 F. Supp. 189, 191 (S.D.N.Y. 1987); <u>Andros Compania Maritima, S.A. v. Andre and Cie, S.A.</u>, 430 F. Supp. 88 (S.D.N.Y. 1977). See also <u>Drys Shipping Corp. v. Freight of the M.S. DRYS</u>, 558 F.2d 1050 (2d Cir. 1977).

Plaintiff seeks to attach Defendant's assets in the hands of non-parties. In order to attach Defendant's assets in the hands of non-parties, an order of attachment and garnishment is required. Plaintiff therefore respectfully requests that the Court issue an order authorizing process of maritime attachment and garnishment in order to secure Plaintiff's claim in London arbitration in the amount of $3,031,504.44, as nearly as can be estimated at present. Plaintiff's claim is the sum of two components.

1.  The first component is the claim of $2,202,096.44 which is for profit lost by Plaintiff when Defendant withdrew the vessel. It in turn is the difference of time charter hire that would have been earned by Plaintiff for subcharter of the vessel during the Charter less hire that Plaintiff would have paid to Defendant.

2.  The second component is for recoupment of the $880,182.43 of Plaintiff's funds which have been attached, and thereby denied to Plaintiff, by Allied Maritime Inc. or any lesser sums ultimately awarded or adjudged against Plaintiff in favor of Allied Maritime Inc. as a result of its claims

8

against Plaintiff. Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren Ltd., 485 F. Supp. 2d 399 (S.D.N.Y. 2007) sustained an attachment and dismissed a motion to vacate an attachment in these facts in the following language;

> I find in the case before me that plaintiff Navalmar's claim in the London arbitration for indemnity against WGSR, the charterer, states a prima facie admiralty claim. Navalmar, having been required to file a million dollar bank guarantee in the Aden Commercial Court, to secure the consignee of the goods for damaged cargo during an ocean voyage aboard the M/V Patara while it was chartered to WGSR, has a direct interest in securing its claim of indemnity against WGSR. In effect, Navalmar has had to prepay a debt owed by it or WGSR, as may be determined, and should have the right by attachment to secure its claim against WGSR for indemnity, just as the consignee of the goods gained security against Navalmar [**15] by arresting the vessel owned by Navalmar. Navalmar, at 404.

Navalmar's posting of security in favor of a third party distinguished that case from other cases which had denied security labeling the claims as "unaccrued", "premature" or "unripe". See, Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd., 478 F. Supp. 2d 532 (S.D.N.Y. 2007), Sanko Steamship Co. Ltd. v. China National Chartering Corp., 536 F. Supp. 2d 362 (S.D.N.Y. 2008) (which, in turn, distinguished Navalmar)

9

## CONCLUSION

By reason of the foregoing, it is respectfully submitted this Court should issue an Order authorizing the issuance of Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B(1) and Plaintiff should have such other and further relief as is just and proper in the circumstances.

Dated:   New York, New York
        April 30, 2008

                              NOURSE & BOWLES, LLP
                              Attorneys for Plaintiff

                              By: _____
                              John P. Vayda (JV-0339)
                              One Exchange Plaza
                              At 55 Broadway
                              New York, NY  10006-3030
                              (212) 952-6200